31016.   MACON BUSSES INC. *v.* DASHIELL.

DECIDED OCTOBER 24, 1945.

*Harris, Russell, Weaver & Land, Jesse W. Bush,* for plaintiff in error.

*Thomas W. Johnson, Hendley Napier,* contra.

*R. Douglas Feagin,* as amicus curiae.

SUTTON, P. J.  E. B. Dashiell sued the Macon Busses Inc. in the municipal court of the City of Macon, for damages to his automobile in the sum of $300.  The petition as amended alleged that on February 1, 1945, at about 1 o'clock a. m. the plaintiff, while driving his 1941 Ford coupe on the Riggins Mill Road in Bibb County, in the direction of Camp Wheeler, came over a hill at a point near the Herbert Smart air port, and ran into a bus owned and operated by the defendant; that the rear of the bus was 18 to 20 inches to the left of the center line of the road on the plaintiff's side, and the plaintiff in coming over the hill and facing the lights of the bus could not see that the rear of the bus was across the center line of the road; that the accident was caused by the negligence of the defendant in that the bus was on the wrong side of the road; that plaintiff's automobile was damaged to such extent that it required $234.90 to repair it, and the market value of the automobile prior to the accident was $931, and after the accident was $631.

The defendant in its answer denied that it was negligent in any manner whatsoever, alleged that the plaintiff himself was negligent and failed to exercise ordinary care and diligence, and further alleged that, if it were negligent, which it expressly denied, the plaintiff could have avoided the consequences thereof by the exercise of ordinary care and diligence.

The defendant also filed a general and special demurrer to the petition, which the court overruled.

A verdict and judgment for $300 were rendered for the plaintiff, and the defendant excepts to the overruling of its demurrers and motion for new trial.

■ Counsel for the defendant in error have made a motion to dismiss the bill of exceptions on the following grounds: "(1) This court is without jurisdiction to consider this appeal. (2) Since the ratification of the revised constitution of Georgia in the election of August 7, 1945, and since article 6, section 1, paragraph 8 became the last expression of the constitution as to

the jurisdiction of the Supreme Court and the Court of Appeals of Georgia, a bill of exceptions and writ of error will not lie directly to the Court of Appeals or to the Supreme Court from the municipal court of the City of Macon; and neither the Court of Appeals nor the Supreme Court has jurisdiction to entertain and hear said appeal in this case, under the law as laid down in *Griffin* v. *Sisson,* 146 *Ga.* 661, and 19 *Ga. App.* 828."

The motion to dismiss the writ of error states that since the adoption of the revised constitution on August 7, 1945, this court does not have jurisdiction to entertain this appeal under the law as laid down in *Griffin* v. *Sisson,* 146 *Ga.* 661 (92 S. E. 278), and s. c. 19 *Ga. App.* 828 (92 S. E. 558). It was held in the *Griffin* case that the constitutional amendment of 1912 (Ga. L. 1912, p. 30), which amended art. 6, sec. 7, par. 1 of the constitution, and which authorized the General Assembly to abolish justice courts in any city of this State having a population of over 20,000, and to establish in lieu thereof such court or courts or system of courts as the General Assembly deemed necessary, together with the provision for the correction of errors in and by said courts by the superior court, Court of Appeals, or the Supreme Court, was impliedly repealed by the constitutional amendment of 1916 (Ga. L. 1916, p. 19), which allows writs of error to the Supreme Court and the Court of Appeals only from superior courts, from the city courts of Atlanta and Savannah, and such other like courts; and it was further held that the municipal court of Atlanta is not a court like the city court of Atlanta or that of Savannah, and that a writ of error would not lie from that court to the Court of Appeals; or, in other words, that the provision of law for a writ of error from the municipal court of Atlanta to the Court of Appeals was repealed by the constitutional amendment of 1916. This decision was rendered by the Supreme Court in April, 1917.

In August, 1927 (Ga. L. 1927, p. 117), art. 6, sec. 7, par. 1 of the constitution was amended by re-enacting the constitutional amendment of 1912, with the further provision that the General Assembly was authorized to abolish justice courts and the office of notary public and ex officio justice of the peace in any county of this State having within its borders a city having a population of over 20,000, and to establish in lieu thereof such court or courts

or system of courts as the General Assembly might deem neces-
.sary, together with the provision for the correction of errors in
and by said courts by the superior court, or the Court of Appeals
or the Supreme Court as the General Assembly might provide or
authorize. In 1933 (Ga. L. 1933, p. 294), the legislature passed
an act which makes provision for direct bills of exceptions to the
Court of Appeals or the Supreme Court from the municipal court
of Atlanta. In *Dillon* v. *Continental Trust Co.,* 179 *Ga.* 198,
203 (175 S. E. 652), the Supreme Court ruled, among other
things, that, "In view of the express constitutional provision con-
tained in the amendment of 1927 and the act of the legislature to
which we have referred, bills of exceptions from the municipal
court of Atlanta to the Court of Appeals will lie. The amend-
ment of 1927 abrogates or repeals the amendment of 1916 to such
an extent as to re-enact the amendment of 1912 allowing direct
appeals from the municipal court of Atlanta." On page 204, it
was further ruled that, "In view of the plain language of the
constitutional amendment of 1927 and the enabling act of 1933,
we are of the opinion that the Court of Appeals has jurisdiction
to determine the questions raised in a bill of exceptions from the
municipal court of Atlanta." By virtue of the authority of the
constitutional amendment of 1927, just referred to, the General
Assembly in 1935 (Ga. L. 1935, p. 534) provided for a writ of
error to the Court of Appeals or the Supreme Court from the
municipal court of the City of Macon. Art. 6, sec. 7, par. 1 of the
constitution as amended by the constitutional amendments of
1912 and 1927 (Code, § 2-3501) was re-enacted and brought for-
ward in the new constitution as art. 6, sec. 7, par. 1 without any
material alteration or change. Art. 6, sec. 2, par. 9 of the con-
stitution, consisting of the constitutional amendment of 1906
(Ga. L. 1906, p. 24) and the constitutional amendment of 1916
(Ga. L. 1916, p. 19; Code, § 2-3009) fixing .the jurisdiction of
the Court of Appeals, was re-enacted and brought forward in the
revised or new constitution as art. 6, sec. 2, par. 8 in the same
language or substantially the same language as that contained in
said Code, § 2-3009. The authority and provision for bringing
cases to the Court of Appeals from the municipal court of the
City of Macon have not been changed in any manner by the adop-
tion of the revised or new constitution on August 7, 1945. And

applying the rule made by the Supreme ·Court in *Dillon* v. *Continental Trust Co.,* 179 *Ga.* 198, the writ of error in this case from the municipal court of the city of Macon will lie and is not subject to the motion to dismiss on the ground that this court is without jurisdiction to entertain the same.

Moreover, the present case was tried and verdict and judgment rendered therein, motion for new trial overruled, and the bill of exceptions was filed in this court before the adoption of the present constitution on August 7, 1945. And art. 12, sec. 1, par. 5 of the amendment adopted August 7, 1945, revising the constitution, provides in plain and unambiguous language that "All judgments, decrees, orders, and other proceedings, of the several courts of this state heretofore made within the limits of their several jurisdictions, are hereby ratified and affirmed, subject only to reversal by motion for a new trial, appeal, bill of review or other proceedings, in conformity with the law of force when they were made." "The Court of Appeals has jurisdiction to decide questions of law that involve application, in a general sense, of unquestioned and unambiguous provisions of the constitution to a given state of facts and that do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of the State or of the United States and that do not involve the constitutionality of any law of the State or of the United States or any treaty." *Gulf Paving Co.* v. *Atlanta,* 149 *Ga.* 114 (99 S. E. 374); *Thompson* v. *Atlanta,* 176 *Ga.* 489 (168 S. E. 312); *City of Waycross* v. *Harrell,* 186 *Ga.* 833 (199 S. E. 119). The motion to dismiss the bill of exceptions is denied.

■ The petition set out a cause of action and the court did not err in overruling the defendant's demurrers. It appears from the petition that the collision between the plaintiff's automobile and the defendant's bus occurred at night while the vehicles were traveling in the opposite direction on a public highway; that the plaintiff's car met and collided with the rear of the defendant's bus, which was 18 to 20 inches across the center of the road on the plaintiff's side; and, as alleged, the accident was caused by the negligence of the defendant, in that the bus was on the wrong side of the road. The Code, § 68-303, provides, among other things: "Every person operating a vehicle upon the highways

shall observe the following traffic rules and regulations: . . (c) An operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center on the highway, so as to pass without interference." See *Payne* v. *Cobb*, 62 *Ga. App.* 767 (9 S. E. 2d, 852).

■ Special ground 4 assigns error on the following charge of the court: "Was the defendant negligent to the extent of a failure to exercise ordinary care in the way alleged? If the defendant was not so negligent, there can be no recovery. If the defendant was so negligent and the injury was the proximate cause [result] of such negligence, then the plaintiff could recover, if by the exercise of ordinary care he could not avoid the consequences of the defendant's negligence;" because this charge contained an incorrect statement of law, and because it withdrew from the jury's consideration entirely one of the defenses of the defendant that, even if the defendant was negligent, the plaintiff himself was negligent, and that his negligence was equal to and exceeded that of this defendant.

And special ground 5 complains of the following charge: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, if the defendant was negligent, he is not entitled to recover. In other cases the defendant is not relieved although the plaintiff may have in some way contributed to the injury sustained. The rule which requires one to avoid the consequences of another's negligence does not apply unless he sees the danger or in the exercise of ordinary care should have seen it or have reason to apprehend it. If the plaintiff and the defendant are both at fault, in that the negligence of both proximately contributes to the injury, but the negligence of the plaintiff does not equal or exceed that of the defendant, there may still be a recovery of partial damages, reduced in proportion to the amount of fault attributable to the plaintiff, except that in all cases save where the defendant is guilty of wilful and wanton misconduct, the rule is further qualified so that the plaintiff is precluded from recovering if, by the exercise of ordinary care on his own part after the negligence of the defendant was apparent or should reasonably have been apprehended, he could have avoided the consequences to himself occasioned by the negligence

of the defendant. Under the comparative-negligence rule, if the negligent acts or conduct of the plaintiff only proximately contributed to the injury, but in some less degree than the negligence of the defendant, he could still recover partial damages unless he could have avoided the consequences of the defendant's negligence, after it had or should have been known to him." The exception is that this charge was erroneous, in that it stated in immediate connection with each other, without proper explanation, two distinct rules of law, thus qualifying the former by the latter, which is not the purpose of the statute; and for the further reason that this charge was confusing and misleading to the jury, and, as the defendant contends, confused and misled them into the belief that, if the defendant was negligent, the only defense open to it was the defense that the plaintiff could have avoided the consequences of that negligence by the exercise of ordinary care after he saw the danger, or in the exercise of ordinary care should have seen it or had reason to apprehend it.

Counsel for the plaintiff in error in their brief argue these two grounds together, and contend that they show a failure by the court to draw the distinction between the two defenses available to the defendant: (1) that the injury complained of was caused by the plaintiff's own negligence; (2) that the plaintiff could have avoided the consequences of the defendant's negligence, if the defendant was negligent, after the same was apparent to the plaintiff, or should have been apparent to the plaintiff if he had exercised ordinary care.

Neither of the charges here complained of was error for any reason assigned. They stated correct principles of law, were adjusted to the pleadings and the evidence, and are not subject to the criticisms directed against them. In connection with and before giving these charges, the court gave the jury the definition of proximate cause and the definition of ordinary care and diligence, and told them that both parties in the case were governed by the same rule of ordinary care and diligence.

■ It is alleged in special ground 6 that the following charge was error: "Now, gentlemen of the jury, this case is what the law terms a negligence case, that is, where negligence is alleged, and a recovery is sought by the plaintiff because of alleged negligence on the part of the defendant. Now, in the language of the

layman, negligence simply means the doing of something that one ought not to do or the failing to do something that one ought to do, by which another is injured or damaged, which injury or damage that other could not have avoided by the exercise of ordinary care and diligence on his part." The exception is that this instruction contained an incorrect statement of the law; and was error in that it substituted the standard of what the layman thought ought to be done for the legal standard by which the conduct of the defendant was to be measured, and that the charge withdrew from the consideration of the jury the legal definition of negligence and in effect allowed the jury to substitute their own opinion as to what the party or parties ought to have done.

The plaintiff alleged in his petition that the collision between his automobile and the defendant's bus was caused by the negligence of the defendant in the operation of the bus, in that the rear of the bus was 18 to 20 inches across the center line of the road on the plaintiff's side, and that this was responsible for the collision; and the plaintiff's evidence tended to sustain the allegations of his petition. The court had instructed the jury with reference to the negligence of the parties, defining ordinary care and diligence as set out in the Code, had told the jury that the absence of such diligence is termed ordinary negligence, and had given in charge the sections of the Code governing the operation of motor vehicles, including section 68-303 (c), to wit: "An operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center on the highway, so as to pass without interference;" and the court then charged the jury as complained of in special ground 6. It is true that the meaning of negligence as here stated by the trial judge does not quite measure up to the definition as contained in the statute, but, when considered in connection with the charge as a whole, it can not be reasonably said that this statement to the jury was prejudicial or harmful to the plaintiff in error; and it is our opinion and judgment that it does not here constitute reversible error.

■ The excerpt from the charge complained of in special ground 7 is not subject to the criticism directed against it, and no error is shown by this ground of the motion. In fact, this ground

is not argued or insisted upon by counsel for the plaintiff in error in their brief.

■ It is alleged in special ground 9 that the testimony of Lieutenant Sackett, a chemist at Camp Wheeler, who was introduced as an expert witness for the plaintiff, was erroneously admitted over the objections of the defendant. This witness testified, in effect, as to the amount of alcoholic content that he found from a blood alcohol test of the plaintiff, made about an hour and a half after the collision in question occurred; and he gave it as his opinion that the plaintiff was not under the influence of liquor at the time of the accident, so as to affect his ability to properly drive an automobile. His evidence was objected to by the defendant on the grounds that it was irrelevant, immaterial, and prejudicial, and was without probative value. The witness testified as to his long experience in laboratory work, that he was a lieutenant in the laboratory department at Camp Wheeler, Georgia, in the United States Army, and that the blood alcohol test of the plaintiff made by him was according to the standard method used by the United States Army in making such blood tests. It was one of the contentions of the defendant that the plaintiff was under the influence of intoxicating liquors at the time of the collision in question. This was denied by the plaintiff, although he admitted that he had taken two or three social drinks of whisky during the evening before the accident occurred between 12:30 and 1 o'clock that night. In these circumstances, it was not error for the court to admit the evidence over the objections thereto, and it was for the jury to pass on its probative value.

■ Special grounds 8 and 10 are elaborations of the general grounds of the motion and will be considered along with them. It appears from the evidence that the plaintiff was a soldier, stationed at Camp Wheeler, Georgia; that at about 9 o'clock on the night of the accident in question he had gone to a dance at the Little Tavern, accompanied by a Miss Singleton, a WAC; and that they were on their way back to Camp Wheeler when the collision between the plaintiff's automobile and the defendant's bus occurred at about 1 o'clock a. m., eastern war time. The plaintiff danced with Miss Singleton during the evening and took a mixed drink of ginger ale and whisky at about 9 o'clock, and then took two more drinks of the same mixture during the evening; but he,

as well as other witnesses, testified that he was not under the influence of intoxicating liquor, or in any way incapacitated to drive an automobile on account of the drinks that he had taken that night, so as to affect his ability to drive an automobile. He testified that he was driving 25 to 30 miles per hour, and when he went over the hill or rise in the road he met the bus; that he was on his side of the road and thought he would clear the bus and did pass the front and middle of the bus, but collided with its rear, which was 18 to 24 inches across the center line of the road on his side; that he could not avoid hitting the back part of the bus, as he was as far over to the right as the traffic was, and if he had gone any farther to the right, he would have run off of the pavement onto the dirt. He and other witnesses testified that the physical marks on the pavement showed or indicated that the collision between the bus and car occurred from 18 to 24 inches on the plaintiff's side of the road. He testified that he had paid $234.90 to have his car repaired, that some of the parts used in repairing the car were of inferior material to the ones formerly on the car, and he would have to have other repairs made; that the car was worth from $900 to $1200 before it was injured, and immediately after the wreck he would not have bought the car at all and did not suppose any one else would have done so; and that the whole side, the rear end, back fender, the door, windshield, the grill, radiator, tires, axle, and parts underneath the car were damaged. It further appears from the evidence that the bus with which the plaintiff's car collided had just pulled around another bus of the defendant which was parked on that side of the road. The evidence for the plaintiff and for the defendant was in sharp conflict, especially as to how the collision between the car and the bus took place, as to whose negligence was responsible for it, and as to whether or not the plaintiff could have avoided the accident. The jury passed on all of this and resolved the issues in favor of the plaintiff. It is not necessary for a decision of this case to further set out the evidence. We have read the record and are of the opinion that the verdict was authorized by the evidence.

■ The court did not err in overruling the motion for new trial. *Judgment affirmed. Felton and Parker, JJ., concur.*