## 48865. TERRY v. THE STATE.

HALL, Presiding Judge. Claude Terry appeals his conviction and ten-year sentence for burglary of a Western Auto Store in Woodbury. At trial, the storekeeper testified that upon hearing strange noises in the store after midnight by means of a receiver located in the bedroom of his nearby home, he hastened to the store and found a burglary in progress. Three men attempted to

flee the scene and he shot at the legs of all of them, concluding that he had struck one. The other two were positively identified as Negroes. The three escaped. The sheriff alerted hospitals to be on the lookout for gunshot victims, and a report shortly arrived from a Warm Springs hospital that Claude Terry had arrived with a gunshot wound, having been "put out" at the hospital by two Negro males who did not linger on the scene, and that Terry had been sent to the Medical Center in Columbus. The sheriff went to the Medical Center and attempted to arrange to be given the bullet to be removed from Terry's back. At trial, this bullet was introduced over defense objection, and expert testimony was given that it had been fired from the storekeeper's gun.

Terry's testimony was that he had been high on wine and marijuana and had fallen asleep in the back of his two friends' car; they stopped somewhere; it later appeared that this was in the vicinity of the Western Auto Store; when they did not return he went to look for them; near the store he encountered yelling and shooting and ran back to the car, not realizing until then that he had himself been hit.

On this appeal, both the state and the appellant address their main argument to the admissibility of the bullet. Terry argues that the chain of custody of the bullet was inadequately shown, and the state argues that the chain of custody did not have to be shown. We find the chain of custody question irrelevant for reasons which will appear below.

When a test has been performed on an item of alleged evidence linking a defendant to a crime, there are at least three considerations involved in the identification of the item: (1) is it properly identified as having actually come from the defendant? (2) is it properly identified as the item actually tested? (3) where the item is one of a class of fungible items, e.g., blood samples, is an adequate chain of custody presented to preserve its identity? This triple test was implicitly recognized in *Pittman v. State,* 110 Ga. App. 625 (139 SE2d 507), concerning a blood sample. In *Pittman,* we found reversible error in admitting a report on a blood alcohol test, the report (in addition to other deficiencies) "not being accompanied by evidence identifying the blood sample analyzed with the defendant. . ." 110 Ga. App. p. 628. The refinement made upon this test in *Starks v. State,* 113 Ga. App. 780 (149 SE2d 841), had the effect of removing the chain of custody consideration from the identification of discrete and

recognizable physical objects such as the ax there under consideration. In *Starks* the conviction was affirmed even though no chain of custody was presented; but the other two tests were met: "One of the officers who found it identified it as the ax he found at the place where he arrested the defendant. The criminologist identified it as the ax with which he had made the tests." 113 Ga. App. p. 781.

Here, the first of the tests set out above has not been met: there is in this record no identification of this bullet as that actually removed from Terry's back. The testimony of Sheriff Branch was that when he went to the hospital he told "Doctor Mayer" to save the bullet they removed. Later, Sheriff Branch returned to the hospital and a nurse whose name he did not remember gave him a bullet in an envelope bearing a note to the effect that it was to be given to Sheriff Branch, and "she said Doctor Mayers told 'em to give me that when I came down." The evidence showed that the bullet was inside a pillbox sealed with tape, and the box was labeled "1-7-73, Claude Terry, .45 caliber bullet, metal center, Doctor Goldman," it bore a set of initials appearing to be "DB"; and the label additionally stated "tied with silk suture for identification." The suture was wrapped around the bullet. Neither Dr. Mayer nor Dr. Goldman appeared at trial, and the record is devoid of evidence of who removed the bullet from Terry's back, as well as being devoid of cognizable evidence that the bullet in the pillbox was that surgically removed. The inference to that effect (based upon hearsay,) from the circumstances and the label was never turned into a "fact" in this litigation through the state's introduction of identifying testimony, and this hole in the proof requires our conclusion that the admission of the bullet was error.

However, on the facts here, the error was not ground for reversal, because the defendant testified that he was shot outside the burglarized store and thus acknowledged the origin of the bullet because there is no testimony in the record tending to show that shots were fired in that incident from any gun other than the storekeeper's. In light of this testimony from Terry, the admission of the bullet must be characterized as harmless error. See generally, Cameron & Osborn, When Harmless Error Isn't Harmless, 1971 Law & Soc. Order 23.

Thus, our inquiry comes down to the question of whether, granted that Terry was shot in the incident, the record contains evidence authorizing the jury to find Terry guilty of burglary. The

testimony of the storekeeper was that as he approached the rear of his store he saw a shadow moving down the side of the store from the back of the building toward the street in the front; that he assumed it was a stray dog; that the figure then grew and stood up and became recognizable as a man; that he shot at it and as he fired the second time the figure stepped from the side of the building out into the rays of the security light in front and spun around flaring the bottom of his coat or jacket which had loose straps, ties, or buckles which the storekeeper could see flying out as he spun. Terry acknowledged as his own the jacket introduced by the state, having a bullet hole in the back, and identified by the storekeeper as similar to that which he observed on the man moving down the side of the store. However, Terry denied that he approached the back of the store, saying at least three times that he never got that far. His testimony is that he never got off the sidewalk.

Faced with this conflict in the evidence, it was the exclusive function of the jury to decide whom to believe. *Pinion v. State,* 225 Ga. 36 (165 SE2d 708). The jury, obviously believing the testimony of the storekeeper, were then confronted with a circumstantial evidence case of burglary, as the storekeeper never testified that he saw the figure alleged to be Terry inside or emerging from the store. However, the trial judge correctly charged the law on circumstantial evidence; Terry gave no explanation consistent with innocence of his presence along the side of or behind the store; he denied entirely that he was there; the jury convicted Terry; and we cannot say as a matter of law that the evidence of the storekeeper failed to exclude all reasonable hypotheses except that of Terry's guilt. Code § 38-109. Cf. *Craft v. State,* 124 Ga. App. 57 (183 SE2d 371). Nor does our decision in *Rutland v. State,* 129 Ga. App. 313 (199 SE2d 595), compel a different result. In *Rutland,* we found insufficient evidence to authorize a conviction of burglary when the prosecutrix whose purse was snatched could place the time only between 3:30 and 5:00 in the afternoon, and defendant was seen in the vicinity of her home (which was also the vicinity of a highway and a store) engaged in innocent activities at 4:00, 4:20, and between 3:30 and 4:00. In *Rutland,* we held that defendant's mere presence in the vicinity was inadequate to exclude all reasonable hypotheses except his guilt of burglary. Here, in distinction to *Rutland,* the testimony was that Terry was observed several minutes after midnight moving softly down the

side of the Western Auto Store, in a crouched position, in the dark, apparently attempting to avoid being observed, at the same moment that a burglary of the building was actually in process with entry effected from the direction from which Terry was moving. The verdict was amply authorized.

*Judgment affirmed. Deen and Stolz, JJ., concur.*

SUBMITTED JANUARY 15, 1974 — DECIDED JANUARY 25, 1974.

*King, Thurman, Marshall & Bonner, Marjorie C. Thurman,* for appellant.

*Eldridge W. Fleming, District Attorney, William F. Lee, Jr.,* for appellee.